NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY EDWARD RAIMONDE, *Appellant.*

No. 1 CA-CR 13-0378
FILED 12-23-2014

Appeal from the Superior Court in Maricopa County
No. CR2011-145256-001
The Honorable Dawn M. Bergin, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Stephen Whelihan
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

_____

**G O U L D,**

¶1        Anthony Edward Raimonde appeals his convictions and sentences for second-degree murder and misconduct involving weapons.  For the reasons that follow, we affirm his convictions and sentences but vacate the court's order requiring Raimonde to pay the fee for DNA testing.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2        Early on a Saturday night, C.C. and A.R. went to a bar in Mesa to watch a sporting event.  The two saw Raimonde, whom they both had known for years, and the three men drank there for about an hour before C.C. drove them to a bar in Scottsdale.  On the way there, Raimonde learned that A.R.'s handgun was under the front passenger seat.

¶3        After an hour of drinking at the Scottsdale bar, the trio went to another bar in Scottsdale.  Sometime after midnight, Raimonde and C.C. started arguing, and C.C. pushed Raimonde, who lost his balance and fell to the ground.  A bouncer told them to leave, although they had shaken hands and told the bouncer they were "cool."  All three left the bar together.

¶4        On the ride home, Raimonde was angry, he told C.C. he felt "disrespected" and "punked."  When C.C. stopped at a convenience store, Raimonde started arguing with C.C. again.  Raimonde punched C.C. in the face, then took off his shirt and demanded they fight.  C.C. and Raimonde got out of the car and started fighting.

¶5        When A.R. realized that C.C. was overpowering Raimonde, who was much smaller, A.R. got out of the car and pulled C.C. off Raimonde, and stood beside C.C. at the rear, driver's side of the car.  Raimonde ran to the passenger side of the car, pulled A.R.'s handgun out from underneath the front

_____

[1]        We view the trial evidence in the light most favorable to sustaining the jury's verdicts.  *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2, 150 P.3d 769, 769 (App. 2007).

seat, and pointed it at C.C. Putting his hands up and stepping back, C.C. said, "No." Raimonde pulled the trigger, shooting C.C. in the head and killing him. Raimonde fled the scene and hid the gun in a planter at a nearby restaurant.

¶6 At trial, Raimonde claimed that C.C. was "still coming after [him]" after A.R. had pulled C.C. off him, and said he shot C.C. because he was "scared for [his] life."

¶7 The court instructed the jury on heat-of-passion manslaughter as a lesser-included offense of second-degree murder as well as the justifications of self-defense and use of force in crime prevention, specifically aggravated assault resulting in serious physical injury. The jury convicted Raimonde of the charged offenses of second-degree murder and misconduct involving weapons. The jury found harm to the victim's family as an aggravating circumstance for the second-degree murder conviction and found the weapons offense to be a dangerous offense. Based on Raimonde's admissions at trial, the court found Raimonde had two prior historical felony convictions and was on probation at the time of the offense. The court sentenced Raimonde to 19 years, a term greater than the presumptive, for the second degree murder conviction and a concurrent term of 8 years, the maximum term, for the weapons conviction. Raimonde filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

**DISCUSSION**

I.     Instruction on Lesser Included Offenses

¶8 Raimonde argues first that the court fundamentally erred in failing to *sua sponte* instruct the jury on the lesser-included offenses of reckless manslaughter and negligent homicide, based on his honest, although unreasonable, belief in the need to use deadly force. As Raimonde acknowledges, because he did not request instructions on reckless manslaughter and negligent homicide, we review for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). Raimonde thus bears the burden of demonstrating that the court's failure to *sua sponte* give these instructions was error, that the error was fundamental, and that he was prejudiced thereby. *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

¶9 Raimonde has not shown that the court erred in failing to *sua sponte* instruct the jury on reckless manslaughter and negligent homicide. Raimonde does not challenge the justification instructions that the jury rejected by returning guilty verdicts. Instead, he argues the court erred in failing to *sua sponte* instruct the jury on an "imperfect justification" theory.

3

**¶10**      Arizona does not recognize the defense of "imperfect justification" which is an honest but unreasonable belief that force was necessary. *See State v. King*, 225 Ariz. 87, 90, ¶¶ 11-12, 235 P.3d 240, 243 (2010) (noting that A.R.S. § 13-404 "adopts a purely objective standard"); *see also* A.R.S. § 13-404(A) (2014);[2] A.R.S. § 13-405(A)(2); A.R.S. § 13-411(A).  Moreover, our supreme court long ago expressly rejected the argument that an honest but unreasonable belief in the necessity for use of force reduces the degree of the offense. *State v. Tuzon*, 118 Ariz. 205, 209, 575 P.2d 1231, 1235 (1978) ("The standard is a reasonable person's belief, not the unreasonable, even if honest, belief of the accused.").  We are not persuaded by Raimonde's argument that this holding is no longer good law.  The current justification statutes specify an objective standard of reasonableness, *see King*, 225 Ariz. at 90, ¶ 11, 235 P.3d at 243, making *Tuzon* equally applicable to the current statutes.  *See* A.R.S. § 13-404(A), A.R.S. § 13-405(A)(2), A.R.S. § 13-411(A).

**¶11**      Nor are we persuaded otherwise by language in the appellate court cases relied upon by Raimonde, *Korzep v. Superior Court*, 172 Ariz. 534, 838 P.2d 1295 (App. 1991), and *State v. Govan*, 154 Ariz. 611, 744 P.2d 712 (App. 1987).  The suggestion in *Korzep* that "consistent with MPC [Model Penal Code] § 3.09, a defendant's honest but unreasonable belief becomes a *mens rea* issue which may lead the trier of fact to acquit or convict of a lesser degree of the charged crime, i.e., a defendant's reckless or negligent use of force may lead to conviction for reckless or negligent homicide rather than for intentional homicide," is dictum. *See Korzep*, 172 Ariz. at 540, 838 P.2d at 1301.  We decline to rely on this language for the broad proposition that an honest but unreasonable belief that force is required always warrants instructions on reckless manslaughter and negligent homicide.[3]  *Govan* does not stand for the proposition that the court must instruct

---

[2]      We cite to the current versions of the statutes, because they have not been amended in material part since the date of this offense, August 28, 2011.

[3]      Moreover, in light of the amendment to A.R.S. § 13-411(C), after *Korzep* was decided, eliminating the subjective component to this defense, and the reliance of Model Penal Code § 3.09 on a purely subjective justification, we decline to rely on this suggestion, even if it were not dictum. *Compare* A.R.S. § 13-411(C) (1991) ("[A] person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of any of the offenses listed in subsection A of this section.") *with* A.R.S. § 13-411(C) (2011) ("A person is presumed to be acting reasonably for the purposes of this section if the person is acting to prevent *what the person reasonably believes is the imminent or actual commission* of any of the offenses listed in subsection A of this section.") (Emphasis added).

on reckless manslaughter whenever the defendant acts on an honest but unreasonable belief. *See Govan*, 154 Ariz. at 615, 744 P.2d 716 (stating that where the evidence supports the instruction the court *can* instruct the jury on the lesser-included manslaughter offense even though defendant has claimed self defense). We accordingly reject Raimonde's claim that a trial court must instruct on reckless manslaughter and negligent homicide as lesser-included offenses of second-degree murder whenever a defendant presents evidence of an honest, yet unreasonable, belief that the use of force is necessary for purposes of a justification defense.

¶12 Additionally, the evidence did not support instructions on reckless manslaughter and negligent homicide. A court is required to instruct and provide verdict forms only on "necessarily included offenses." *See State v. Wall*, 212 Ariz. 1, 3, ¶¶ 13-14, 126 P.3d 148, 150 (2006); Ariz. R. Crim. P. 23.3 (stating that "[f]orms of verdict shall be submitted to the jury for all offenses necessarily included in the offense charged"). "An offense is necessarily included 'when it is lesser included' and 'the facts of the case as presented at trial are such that a jury could reasonably find that only the elements of a lesser offense have been proved.'" *State v. Gipson*, 229 Ariz. 484, 486, ¶ 14, n.2, 277 P.3d 189, 191 n.2 (2012) (*quoting Wall*, 212 Ariz. at 3, ¶ 14, 126 P.3d at 150). "To determine whether there is sufficient evidence to require the giving of a lesser included offense instruction, the test is whether the jury could rationally fail to find the distinguishing element of the greater offense." *State v. Jackson*, 186 Ariz. 20, 27, 918 P.2d 1038, 1045 (1996) (*quoting State v. Krone*, 182 Ariz. 319, 323, 897 P.2d 621, 625 (1995)); *see also State v. Bearup*, 221 Ariz. 163, 168, ¶ 23, 211 P.3d 684, 689 (2009).

¶13 On this record, the jury could not have rationally failed to find that Raimonde shot C.C. point-blank in the head intentionally, knowingly, or at a minimum recklessly, under circumstances which showed an extreme indifference to human life. *Compare* A.R.S. § 13-1104(A) (setting forth mental states for second-degree murder) *and* A.R.S. § 13-1103(A)(2) (requiring one of those mental states for commission of provocation manslaughter) *with* A.R.S. § 13-1103(A)(1) (defining so-called reckless manslaughter as "[r]ecklessly causing the death of another person") and A.R.S. § 13-1102(A) (a person commits negligent homicide "if with criminal negligence the person causes the death of another person"). Raimonde acknowledged that he raised the gun, pointed the gun at C.C., and pulled the trigger. He claimed that he shot the victim because he was in fear of his life. Raimonde's own testimony accordingly demonstrated that he shot the victim intentionally. There was no evidence in the record from which a reasonable jury could conclude that Raimonde acted only recklessly or negligently. We accordingly conclude that the trial court did not err, much less fundamentally err to Raimonde's prejudice, in failing to *sua sponte* instruct on

reckless manslaughter and negligent homicide as lesser included offenses of the charged crime of second-degree murder.

## II.     Provocation Manslaughter Instruction

**¶14**        Raimonde also argues that the court fundamentally erred in instructing the jury on second-degree murder and provocation manslaughter. He contends the court should have instructed the jury that the State had the burden to prove beyond a reasonable doubt the absence of the special circumstance distinguishing the lesser offense, that is, that the murder was not committed "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim," to convict Raimonde of second-degree murder.

**¶15**        During discussion of the proposed instructions on second-degree murder and provocation manslaughter, the prosecutor noted that he had no objection; Raimonde, however, did not ask for a separate instruction on the burden of proving the absence of the special circumstance, or object to the jury instruction that he now claims was misleading.  Raimonde accordingly bears the burden of demonstrating that there was error, and that the error was both fundamental and prejudicial.  *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

**¶16**        We review *de novo* whether the instructions given properly state the law.  *State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997).  In doing so, we examine the instructions in their entirety to determine if they accurately and adequately reflect the law applicable to the case.  *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75, 14 P.3d 997, 1015 (2000); *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998).  The instructions must not mislead the jury.  *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996).  Closing arguments, however, may clarify and even cure deficient jury instructions.  *See State v. Milke*, 177 Ariz. 118, 122-23, 865 P.2d 779, 783-84 (1993).

**¶17**        Raimonde has failed to meet his burden to demonstrate that the court erred, much less fundamentally erred to his prejudice, in failing to include an instruction on the burden of proving the special adequate provocation circumstance.  Manslaughter committed in the heat of passion is a lesser included offense of second-degree murder.  *See Gipson,* 229 Ariz. at 485, ¶ 4, 487, ¶ 17, 277 P.3d at 190, 192.  Heat-of-passion manslaughter admittedly is an unusual type of lesser included offense in that "[i]nstead of deleting an element of the greater offense, it specifies a different circumstance as a requirement to find the lesser offense," that is, the commission of second-degree murder "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim."  *Peak v. Acuna*, 203 Ariz. 83, 84, ¶¶ 5-6, 50 P.3d 833 (2002); A.R.S. § 13-1103(A)(2).  "Unlike a true element of a charged offense, it is not the State's

burden to prove 'a sudden quarrel or heat of passion resulting from adequate provocation by the victim.' The existence of this 'different circumstance' is a question of fact for the jury to determine based on the evidence presented." *State v. Lua*, 235 Ariz. 261, 263, ¶ 9, 330 P.3d 1018, 1020 (App. 2014) (internal citations omitted).

**¶18** The instructions the court gave accurately and adequately reflected the governing law and were not misleading. The court instructed the jury that the State had the burden of proving each element of the offense beyond a reasonable doubt. The court also instructed the jury that it could convict Raimonde of second-degree murder only if it found beyond a reasonable doubt that "the homicide was not committed upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." The court further instructed the jury in accordance with A.R.S. § 13-115(B) that if it determined that Raimonde was guilty of either second-degree murder or manslaughter, "but you have a reasonable doubt as to which it was, you must find the Defendant guilty of manslaughter." *See* A.R.S. § 13-115(B) ("When it appears that a defendant has committed a crime or public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he may be convicted of the lowest of such degrees only.")

**¶19** These instructions, read in their entirety, effectively informed the jury that it could not convict Raimonde of second-degree murder unless the State had proved beyond a reasonable doubt that the murder had not been committed "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." Moreover, the State's closing argument suggested that the State believed it had the burden, and undertook the burden, of proving the absence of the special circumstance in order to convict Raimonde of second-degree murder. The prosecutor acknowledged in settling jury instructions that it was his burden to prove the absence of this special circumstance to convict Raimonde of second-degree murder. In closing, the prosecutor presented an extensive argument on how the evidence proved that the homicide did not result from a sudden quarrel or heat of passion resulting from adequate provocation. Defense counsel in turn argued that the beating Raimonde suffered at the hands of C.C. immediately before the shooting constituted adequate provocation, and Raimonde's loss of control reduced the offense to manslaughter.

**¶20** Because the court's instructions, considered in their entirety, correctly stated that the State had the burden to prove the absence of the "special circumstance" in order to convict Raimonde of the more serious offense of second-degree murder, we do not address the State's argument that the existence of this "special circumstance" is an affirmative defense reducing second-degree

murder to manslaughter, on which the defendant has the burden of proof. *Cf. Lua*, 235 Ariz. at 263, ¶ 9, 330 P.3d at 1020.

**¶21** For all of these reasons, we conclude that the court did not err, much less fundamentally err to Raimonde's prejudice, by instructing the jury as it did. The instructions in this case adequately informed the jury of the governing law, and the court did not fundamentally err in giving them.

III.    DNA Fee

**¶22** Raimonde also argues, and the State concedes, that the court erred in ordering Raimonde to pay for DNA testing. We agree. A.R.S. § 13-610 does not authorize such an order. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013).

**CONCLUSION**

**¶23** For the foregoing reasons, we affirm Raimonde's convictions and sentences, but vacate the court order requiring Raimonde to pay for DNA testing.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh