NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID GERALD WALKER, *Appellant.*

No. 1 CA-CR 15-0263
FILED 7-19-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2012-153596-001
The Honorable Michael W. Kemp, Judge

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By David A. Simpson
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Frances J. Gray
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**N O R R I S**, Judge:

¶1        David Gerald Walker appeals his convictions for second-degree murder, kidnapping, tampering with physical evidence, disorderly conduct and possession or use of marijuana.  As relevant to our decision, Walker argues the jury instructions and verdict form that addressed provocation manslaughter were contradictory and misstated the law. We agree.  Accordingly, we reverse Walker's conviction for second-degree murder, but affirm his other convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        Walker and his ex-wife divorced in 2010.  At trial, Walker testified that despite the divorce, he believed he and his ex-wife were still a couple.  One night just after midnight, Walker entered the home of his ex-wife and two children unannounced. He found his ex-wife and the victim asleep in bed.  Walker struck the victim in the head at least twice with a baseball bat he either found by the bed or took from the garage as he entered the house.

¶3        Walker dragged his ex-wife out of the bedroom, verbally abused her, and struck her.  Walker forced her to wake their two children and ordered the three of them into his car.  He placed the baseball bat he had used to attack the victim in the trunk of the car.  Walker then forced his ex-wife to drive around while he spoke to various people on his cell phone. He told his ex-wife that if she reported what he had done to police, he would have someone "take care of [her]" so that their children would grow up without her.  After Walker ordered his ex-wife to stop at a closed restaurant parking lot, he got out of the car, retrieved the baseball bat from the trunk, and again told his ex-wife that if she told police what had happened he "had people" who would hurt her.  Walker then threw the bat in a dumpster and jogged away.  After Walker jogged away, Walker's ex-wife drove to a drugstore and called 911.  The victim died of blunt force trauma to his head.

**¶4**　　　　At trial, Walker admitted killing the victim. But, he argued he was guilty of "provocation manslaughter" and not murder because he had "freaked out" after finding his ex-wife in his bed with the victim.  Ariz. Rev. Stat. ("A.R.S.") § 13-1103(A)(2) (Supp. 2015)[1] (person commits provocation manslaughter if he or she commits second-degree murder "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim"); A.R.S. § 13-1101(4) (2010) ("'Adequate provocation' means conduct or circumstances sufficient to deprive a reasonable person of self-control.").

**¶5**　　　　A jury found Walker guilty on the counts listed above. *See supra* ¶ 1.  The superior court sentenced Walker to an aggregate term of 30 years in prison.

## DISCUSSION

I.　　　The Murder and Manslaughter Jury Instructions and Verdict Form

　　A.　　Background

**¶6**　　　　At Walker's request, the superior court instructed the jury on second-degree murder as a lesser-included offense of first-degree murder. That instruction identified the elements of second-degree murder and explained the difference between first and second-degree murder.  The instruction further informed the jury that if it determined Walker was guilty of either first or second-degree murder but had a reasonable doubt as to "which it was," it was required to find Walker guilty of second-degree murder.  To ensure that the jury would consider whether the circumstance differentiating second-degree murder from provocation manslaughter was present, the court then instructed the jury as follows:

> If you find the elements of second-degree murder proven beyond a reasonable doubt, you *must* consider whether the homicide was committed upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim.  If you unanimously find that the homicide was committed upon a sudden quarrel or heat of passion resulting from

---

[1]Although the Arizona Legislature amended certain statutes cited in this decision after the date of the offenses, the revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

adequate provocation by the victim, then you
must find the defendant not guilty of second-
degree murder.

(Emphasis added.) *See State v. Lua*, 237 Ariz. 301, 306, ¶ 20, 350 P.3d 805, 810
(2015) (quoting Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 11.04 (second-
degree murder) (3d ed.)).

**¶7**         At Walker's request, the superior court also instructed the
jury on provocation manslaughter as a lesser-included offense of second-
degree murder. Structured in accordance with *State v. LeBlanc*, 186 Ariz.
437, 438, 924 P.2d 441, 442 (1996) (jury may deliberate on a lesser-included
offense if it either finds defendant not guilty on the greater charge or, after
reasonable efforts, cannot agree whether to acquit or convict on the greater
charge), the court instructed the jury as follows:

> The crime of second-degree murder includes
> the lesser offense of manslaughter. You may
> consider the lesser offense of manslaughter if
> either
>
> 1. you find the defendant not guilty of second
> degree murder[;] *or*
>
> 2. after full and careful consideration of the
> facts, you cannot agree on whether to find the
> defendant guilty or not guilty of second degree
> murder.

(Emphasis in original.)

**¶8**         Finally, the superior court gave the jury a single verdict form
that addressed all three homicide offenses—first-degree murder, second-
degree murder, and provocation manslaughter. As relevant here, the
portion of the verdict form that addressed provocation manslaughter
instructed the jury as follows: "If you find the defendant guilty of Second
Degree Murder, **do not** complete this portion of the verdict form. In other
words, complete this portion *only* if you find the defendant either not guilty
of Second Degree Murder or you are unable to decide." (Emphasis in
original.) Walker did not request this verdict form but raised no objection
to it. Indeed, at the time of Walker's trial, the verdict form and the foregoing
instructions were in accordance with this court's opinion in *State v. Lua*, 235
Ariz. 261, 261, ¶ 1, 330 P.3d 1018, 1018 (App. 2014), *vacated,* 237 Ariz. at 307,
¶ 21, 350 P.3d at 811. In that opinion, we held that provocation

4

manslaughter was a lesser-included offense of second-degree murder. *Id.*
at 264, ¶ 12, 330 P.3d at 1021.

        B.      The Instructions and Verdict Form Were Contradictory and
                Misstated the Law

**¶9**        On appeal Walker argues the verdict form and the
instructions discussed above were contradictory and misstated the law.
Because Walker did not object to the verdict form, we review his arguments
about it for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-
20, 115 P.3d 601, 607 (2005). And even though Walker requested the jury
instructions, he has not waived his right to challenge those instructions on
appeal under the invited error doctrine (and the State does not argue
otherwise) because, as noted, the instructions were in accordance with then-
existing law. *See State v. Miranda*, 200 Ariz. 67, 68 n.1, ¶ 1, 22 P.3d 506, 507
n.1 (2001) (invited error doctrine does not bar defendant from appealing
jury instruction given by superior court at his request when law changed
after his trial). Accordingly, we review Walker's arguments about the jury
instructions for fundamental error as well. *Id.* (reviewing jury instructions
requested by defendant for fundamental error when law changed post-
trial).

**¶10**       The verdict form and instructions may be correct statements
of the law if considered in isolation and without context. When we consider
them together, and in the context of this case, however, they were
confusing, contradictory, misstated the law and resulted in fundamental,
prejudicial error. *Henderson*, 210 Ariz. at 567, ¶¶ 19-20, 115 P.3d at 607.

**¶11**       First, provocation manslaughter is not a lesser-included
offense of second-degree murder. *Lua*, 237 Ariz. at 303, ¶ 7, 350 P.3d at 807.
It is simply a less serious offense. *Id.* at 305, ¶ 16, 350 P.3d at 809. Second,
a superior court should not give a *LeBlanc*-type of instruction when it has
instructed the jury on provocation manslaughter. *Id.* at 306, ¶ 19, 350 P.3d
at 810. Instead, if the court instructs the jury on provocation manslaughter,
it should give the additional provocation language approved by the
supreme court in *Lua*. *Id.* at ¶ 20. That is, the court should instruct the jury
that if it finds the State has proven all the elements of second-degree
murder, it *must* consider "whether the homicide was committed upon a
sudden quarrel or heat of passion resulting from adequate provocation by
the victim," and that, if it makes those findings, it must find the defendant
guilty of manslaughter rather than second-degree murder. This ensures
"the jury will consider whether the circumstance differentiating second-
degree murder from provocation manslaughter is present" and justify a

finding of guilt for provocation manslaughter. *Id.* (citing comment to RAJI Stand. Crim. 11.04).

¶12     In this case, however, the court included the additional provocation language for the second-degree murder instruction and the *LeBlanc*-type instruction in its instructions to the jury. The result was the second-degree murder instruction correctly told the jury it *must* consider whether the offense was provocation manslaughter if the State proved every element of second-degree murder, but the *LeBlanc*-type instruction that immediately followed that instruction directly contradicted that instruction as it informed the jury that it *may* consider manslaughter *only* if it found Walker *not guilty* of second-degree murder or could not agree on a verdict for second-degree murder.   The verdict form for the homicide offenses compounded the confusion further because it also contradicted the second-degree murder instruction and told the jury "**do not**" complete the manslaughter portion of the form if it found Walker guilty of second-degree murder.   The verdict form then instructed the jury, "In other words, complete this portion *only* if you find the defendant either not guilty of Second Degree Murder or you are unable to decide."   (Emphasis in original.)

¶13     The superior court's summary of the homicide verdict form immediately after the State's rebuttal argument compounded the confusion.   The court told the jury that if it considered second-degree murder and either found Walker not guilty of second-degree murder or could not reach a decision on second-degree murder, "now you can go on to manslaughter.   If you find him guilty of second-degree murder, you don't consider manslaughter.   You are done with that count.   All right? Does that make sense?"   Therefore, the jury began its deliberations having been told that it could not consider whether the offense was provocation manslaughter unless it either found Walker not guilty of second-degree murder or could not reach a decision on second-degree murder.   This also directly contradicted the second-degree murder instruction and misstated the law.

¶14     Our supreme court has instructed that we are to presume juries follow their instructions. *State v. Manuel*, 229 Ariz. 1, 6, ¶ 24, 270 P.3d 828, 833 (2011).   The instructions, taken together and considered in context, contradicted each other, were confusing, misleading, and misstated the law. If the jury followed these instructions and the verdict form, it would not have been able to consider whether the offense was provocation manslaughter. This was fundamental, prejudicial error that denied Walker a fair trial on the homicide charge.

¶15            In its answering brief, the State acknowledges the instructions and verdict form were incorrect but argues the error was harmless because the evidence did not support instructing the jury on provocation manslaughter.  We reject the State's argument; the trial evidence amply supported instructing the jury on provocation manslaughter. *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998) (party is entitled to have jury instructed on any theory reasonably supported by the evidence).

¶16            Walker testified he and his ex-wife were still "husband and wife" despite their divorce, and considered his ex-wife his "property." Friends and neighbors testified Walker and his ex-wife presented themselves as a couple.

¶17            Walker viewed the victim as a "problem" and did not want the victim around his ex-wife or his children.  Walker testified that several years before the attack, his ex-wife admitted she had an affair with the victim while she and Walker were still married.  Although she promised Walker the victim would no longer be part of her life, several months later Walker discovered the victim at a park with his wife and children.  Walker then attacked the victim.  Less than two months before Walker found his ex-wife in bed with the victim, Walker threatened the victim in a Facebook post after finding a picture of his two children on the victim's Facebook page.

¶18            Walker testified that given all this, he "freaked out" and "lost it" when he saw the victim in bed with the woman he still considered his wife.  Walker believed his ex-wife and the victim were cheating on him again and told the jury that was why he grabbed the baseball bat and struck the victim in the head.

¶19            This evidence was more than sufficient to support instructing the jury on provocation manslaughter.  Indeed, at the close of the defense case, the superior court acknowledged, "It is, in many ways, a classic manslaughter situation."   That Walker's defense and the supporting evidence may have been imperfect or unpersuasive—as the State argues on appeal—presented issues for the jury to decide.  *State v. Cid*, 181 Ariz. 496,

500, 892 P.2d 216, 220 (App. 1995) (credibility of the evidence and its weight, if any, are matters for the jury to decide).[2]

**¶20**        The State also argues the error was harmless because provocation manslaughter should apply only when a defendant "catches" a spouse in an adulterous relationship. We reject that argument. First, A.R.S. § 13-1103(A) defines provocation manslaughter broadly—as the commission of second-degree murder "upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim." Second, on its face, the statute is not conditioned on a pre-existing spousal relationship. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (when interpreting a statute, appellate court looks to its plain language as the best indicator of legislative intent). And third, the State's argument cannot be squared with the Arizona Supreme Court's decision in *State v. Harwood*, 110 Ariz. 375, 519 P.2d 177 (1974). There, the defendant, who was not married to the victim, shot her when she threatened to follow him home from a bar and cause a disturbance at his house. *Id.* at 377, 519 P.2d at 179. The supreme court reversed the defendant's conviction because the superior court had failed to instruct on provocation manslaughter. *Id.* at 380, 519 P.2d at 182.

**¶21**        We thus agree with Walker that the superior court committed fundamental, prejudicial error in instructing the jury regarding provocation manslaughter. We therefore reverse his conviction for second-degree murder and remand for a new trial on that offense.

II.     The Remaining Counts and Issues

**¶22**        Walker's opening brief asked that we reverse all of his convictions. Walker's arguments on appeal, however, concerned only his

---

[2]The State also argues in its answering brief that Walker conceded in his opening brief that his provocation manslaughter defense was "not true." We see no such concession in his opening brief, and the State's argument is based on a misreading of Walker's briefing on appeal. In his opening brief, Walker argued the superior court should not have excluded evidence that he claimed showed the victim was sexually preying on his children, asserting that this evidence further explained why he attacked the victim—he discovered the victim in his home with access to his children, and he believed the victim was "preying upon his young children." He then argued that without this evidence, the State was easily able to demolish his provocation manslaughter defense at trial as "not true."

conviction for second-degree murder. He did not argue that any of the asserted errors affected his other convictions or sentences. Therefore, we affirm Walker's convictions and sentences on the other counts.

**¶23**      Finally, because we reverse and remand Walker's conviction for second-degree murder, we have not addressed the alleged prosecutorial misconduct or the superior court's preclusion of evidence. Our decision does not prevent Walker from re-litigating on remand the admissibility of the evidence precluded by the superior court.

## CONCLUSION

**¶24**      We reverse Walker's conviction for second-degree murder and remand for proceedings consistent with this decision. We affirm Walker's other convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA